ALGERNON S. PATRICK, EXECUTOR, v. ELIZA B. PATRICK.

FILED OCTOBER 5, 1904. No. 13,612.

Wills: DECEDENT'S DEBTS: PAYMENT: SETTLEMENT OF ESTATE. A testa-
tor devised lands in fee to his wife in lieu of dower and of her
distributive share in his estate, that at the time of the execution
of his will were free from incumbrance. Afterwards, he mort-
gaged them to secure his personal obligation. The will pro-
vided expressly that all his debts should be paid out of his
personal estate. The mortgagee did not prove his claim in pro-
bate proceedings, but the county court, by order, directed the
executor to pay the mortgage debt, which he did. *Held*, That upon
final settlement of his accounts he was entitled to be credited
with the sum so expended.

ERROR to the district court for Douglas county: WIL-
LARD W. SLABAUGH, JUDGE. *Reversed.*

*Robert W. Patrick* and *Isaac E. Congdon*, for plaintiff
in error.

*Byron G. Burbank*, contra.

AMES, C.

In 1888, Mathewson T. Patrick, a resident of the city of
Omaha and the owner of a considerable estate therein,
and elsewhere in Nebraska, executed his last will in which
he provided, in the first instance, for "the payment of
his funeral charges, the expenses of administering his
estate, and all his debts, out of his personal property."
Secondly, he devised and bequeathed a dwelling house prop-
erty, described as lot 6 in block 56 in the city of Omaha,
then owned by him and unincumbered, to his wife in fee,
together with certain household property, and an annuity
of $1,000 to be charged upon the residue of his lands and
paid during her widowhood. These provisions were ex-
pressed to be "in lieu of her dower and of any distributive
share in my estate to which she might otherwise be en-
titled." The residue of his estate, real and personal, he

bestowed upon his children; and he nominated his brother, Algernon S. Patrick, as sole executor of his will, and as guardian of his children.

In 1896 he executed his interest bearing promissory note to the National Life Insurance Company of Vermont for the principal sum of $10,000, and as security for its payment executed, together with his wife, a mortgage upon the above mentioned lot 6, together with an adjoining lot also owned by him. In 1899 he died seized of these lots and of a considerable additional estate, and still owing the principal of the mortgage debt. The widow elected to take under the will, which was duly admitted to probate, and Algernon S. Patrick duly qualified as executor and guardian. The usual orders were made and notices published for the presentation of claims, and on the 23d day of September, 1899, after the lapse of time prescribed by law and fixed by order of the court, an order was duly entered barring all claims not theretofore filed, among which was the above mentioned $10,000 note. Among the claims that were so presented and properly allowed were certain notes called the Kuhns' and Collins' notes. From the orders allowing them no appeal was taken. On the 11th day of November, 1901, the executor having come into the possession of sufficient personal estate of the deceased for the payment of the claims allowed by the court, and expenses of administration, the county court, on his application, made and entered the following order:

"This matter coming on to be heard on the petition of the executor, Algernon S. Patrick, to be directed by the court to pay to the National Life Insurance Company of Montpelier, Vermont, the sum of ten thousand ($10,000) dollars, together with interest thereon at the rate of six per cent. per annum from the first day of September, A. D. 1901, and the guardian *ad litem* being present in court, and the matter being heard upon the evidence and the law, it is hereby ordered, adjudged and decreed that the said executor pay the sum of ten thousand ($10,000) dollars, together with interest at the rate of six per cent.

per annum from the 1st day of September, A. D. 1901, to the said National Life Insurance Company of Montpelier, Vermont."

As is indicated by this order, upon the making of the application for it, a guardian *ad litem* had been appointed for the heirs, who were minors, and he participated in the proceedings. In compliance with the order, the executor paid off and discharged the mortgage debt. On the 9th day of January, 1902, the executor having paid and satisfied the claims allowed by the court against the estate of the deceased, rendered a final account, and prayed to be discharged from his trust.

At and for many years prior to the death of the testator, he and his brother, the executor, had constituted a partnership, owning a large amount of real and personal property, and engaged in the business of farming and the raising of live stock. When application was made for passing the final accounts of the executor, as above mentioned, the guardian *ad litem* and the widow filed separate exceptions thereto. On the hearing, the county court disallowed all the exceptions and granted the application of the executor, and by the same order relieved him of his trust as guardian, and substituted the widow in his place therein. The widow accepted the guardianship, but in her own behalf and in behalf of the minors appealed to the district court from the remainder of the decree. In the district court there was a trial to a jury, who returned a verdict against the executor for the sum of $2,287.74, upon which a judgment was rendered against him, to reverse which he prosecuted a petition in error in this court.

For some reason not made known to us, the briefs of counsel in this court described the parties as appellant and appellee, and the cause was argued by counsel as though it had been brought here by appeal; but, both because such procedure is inconsistent with the record and because there appears to us to be grave doubt, in view of the decision of this court in *Nebraska Wesleyan University v. Craig's Estate*, 54 Neb. 173, whether jurisdiction

can be acquired here by appeal, we shall treat the case as a proceeding in error.

The principal errors urged in brief and argument are that the trial judge, by his rulings and instructions at the trial, and by his judgment upon the verdict, denied to the executor credit upon his account for the payment of the $10,000 mortgage upon the homestead and of the Kuhns' and Collins' notes, and we shall confine what further we have to say to these items. As to the notes, it appears to us that but little need be said. They were executed by the testator and were unpaid at the time of his death, and were regularly proved before, and allowed by, the county court in the due course of administration. No objection was made, nor appeal taken, by or on behalf of the widow or children, and there is no accusation of fraud or lack of good faith in connection with them or with these proceedings. It was, indeed, alleged on the trial in the district court, and is urged here, that the notes were given for money which was borrowed for, and which was actually devoted to, the uses of the partnership, and that the funds of the latter ought to have been devoted to their payment. This fact, however, if it be a fact, would not have been a defense to the maker if he had been sued upon them in his lifetime, and, of course, his death clothed it with no new or additional importance. It is merely a matter to be taken into account upon a settlement of the partnership affairs between the surviving partner and representatives of the deceased.

As respects the mortgage to the life insurance company, the same claim is made as with respect to the notes and it should, of course, be disposed of in the same way; but it is further urged that this alleged debt never was presented or proved before the county court for approval or allowance, nor established in any manner as a valid claim against the estate, and that the executor was therefore wholly without authority or justification for its payment; and to the suggestion by the executor that the will expressly provides for the payment of all the debts of the

testator out of his personal estate, it is replied that, in the absence of proof and allowance by and before the county court, there is no competent evidence that the mortgage claim was a debt of the testator or is a valid charge against his estate. In support of this contention counsel cites *Huebner v. Sesseman*, 38 Neb. 78, construing and upholding the statute which makes the proof and allowance of claims in the manner mentioned the sole justification of an executor or administrator for their payment, and a large number of decisions from other states to a like effect. The correctness and authority of these decisions is not disputed by the plaintiff in error, nor doubted by ourselves, but it is found upon examination that they all have reference to alleged indebtedness of the testator not secured by mortgage on his real estate, or to deficiencies remaining after the exhaustion of such security. In the case before us there are two circumstances not present, or at least not adverted to, in the cases cited: *First,* an expressed intention of the testator that the indebtedness should be paid out of his personal estate; and, *Second,* the fact that the incumbered property was worth considerably more than the amount of the mortgage lien. The proof and allowance of the debt would have been the occasion of some expense and annoyance to the mortgagee, which it could safely avoid by reliance upon its security, and which there were no means of coercing it to incur. The contention of the defendant in error amounts, therefore, to saying that it lay within the power of the mortgagee, by mere inaction, to defeat the expressed intent of the testator. This is a conclusion to which we suspect that the court would, in the absence of authority, arrive with great reluctance, if at all. But it is in conflict with two well recognized principles whose united weight is sufficient for its overthrow. The first, in support of which it is not necessary to cite authority, is that it is the chief duty of courts and executors to carry into effect the intent of a testator, and the second is that it is the presumed intent of a testator, whether expressed in his will or not, that a

devisee of lands shall take them free from incumbrance and that even undevised lands shall be freed from incumbrances out of the personal estate, if there shall be sufficient of the latter for that purpose. Authorities go even further, and hold that, if an administrator of an intestate estate negligently permits real estate to be sacrificed for the satisfaction of liens which there is sufficient personal estate to discharge, he may be liable to the heir for waste. Thus says Dame, Probate and Administration, page 302:

"It is an old established rule of law that an administrator has the right to satisfy a mortgage debt from the personal assets of the estate, thus relieving the realty from the incumbrance; and it has been held that the heir may compel the application of the personalty to the discharge of a mortgage, unless he disposes of his entire interest in the estate or in the realty. There is little to be gained from such a course. The heir might just as well receive his share in cash, and apply it to the satisfaction of the mortgage, as to compel the personal representative to pay it. In regard to testate estates, the rule is necessarily different, the will often containing provisions setting apart certain property for the payment of debts, or a clearly expressed intention that the devisee should take subject to the incumbrance. If it clearly appears from the terms of the will that it was the intention of the testator that the devisee should take subject to the incumbrance, the personal estate cannot be used for that purpose; otherwise the same rule applies as in the case of intestate estates; and the same would be true of the payment of vendors' liens upon the realty. Taxes upon the realty accruing previous to the death of the decedent should be paid from the personalty. Those accruing after his death are a charge upon the land, and the heir or devisee takes subject to them, and the statute does not require them to be paid by the personal representative."

2 Woerner, American Law of Administration (2d ed.), sec. 518, says:

"Disbursements in Respect of the Real Estate. The executor or administrator is bound, whenever he is lawfully in charge of real estate of the decedent, to exercise the same diligence and prudence in its preservation and protection as if it were personal property in his hands. Hence they should be allowed credit for all disbursements, made prudently and in good faith, for necessary repairs, insurance against loss by fire, municipal assessments, and in discharging mortgages or other incumbrances upon the same, or interest thereon, or in redeeming lands sold for the nonpayment of taxes, not including, of course, such penalties and expenses as are occasioned by the negligence of the administrator. So also with respect to taxes; the executor or administrator should pay them and receive credit therefor whenever accruing while the real estate itself is lawfully in charge or under his control; and even when not, it seems to be generally held that he should pay such taxes as were assessed against the deceased and due in his lifetime, constituting a lien at the time of his death, and a liability of the estate, and this although such claim be not probated against the estate."

These opinions of text writers appear to be fully sustained by judicial decisions. *Brown v. Baron*, 162 Mass. 56, 37 N. E. 772; *Richardson v. Hall*, 124 Mass. 228; *Hoff's Appeal*, 24 Pa. St. 200; *Burnett v. Lyford*, 93 Cal. 114, 28 Pac. 857; *Sutherland v. Harrison*, 86 Ill. 363. This last is a very instructive case, a very considerable number of authorities being collected and quoted in the opinion. The rule of law is very old and well established and seems to be subject to a single exception in the American courts, namely, the case of the purchase of an estate incumbered for debt for which the deceased did not become personally liable. How universal in its application, or how well grounded in principle, this exception may be, it is not to the present purpose to inquire. The incumbrance that was discharged by the executor in this case covered property devised to the children, as well as that devised to the widow, and its payment was beneficial rather than in-

jurious to both. In no view can the payment be regarded as a tortious misapplication of funds by the executor, who derived no personal benefit from it. At the worst it would have been no more than an unauthorized conversion of personal into real property, and the devises and bequests to the children being residuary in their character, they have suffered no injury by reason of it. For there can hardly be a doubt that, as between them and the widow, the latter would have been entitled to have the estate devised to her exonerated from the burden. The payment neither devastated the estate, nor diminished the residuum.

We suppose the real motive of the appeal to the district court and the proceedings in this court to be a desire to shift the obligation to the partnership estate of Patrick Brothers. But we think this is not the proper course for the pursuit of that object. The will provides for the perpetuation of the partnership for a term of 5 years after the death of the testator, which term expired in February of the present year. There was a special administrator appointed to represent the interests of the testator in the partnership, and the business was continued after his death in much the same manner as had been done before. Upon the final dissolution of the firm and the winding up of its affairs, an accounting may be had, and the rights and obligations of the parties in interest ascertained and adjusted in like manner as in other such cases.

For the foregoing reasons, it is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings.

REVERSED.