HANNIBAL TRUST COMPANY, Executor of Will of HENRY S. ELZEA,
v. VAN B. ELZEA ET AL.; FRANCES C. DUNN, Appellant.

Division One, July 30, 1926.

**1. WILL: Construction.** The intention of the testator, if not in conflict with public policy or some established rule of law, must control the construction of a will.

**2. MORTGAGE DEBTS: Payment out of Personalty.** At common law, the personalty being regarded as the primary fund for the payment of testator's debts, the devisee of encumbered real estate might call upon the executor to discharge the mortgage debt out of the testator's personal estate; and that

upon the theory that the personalty has been enlarged by the money for which the mortgage was given. But such is not the right of the devisee if a contrary intention is inferable from the will, or the common-law rule has been changed by statute.

3. MORTGAGE DEBT: Payment: Order of Available Funds: Residuary Estate. If no intention is inferable from the will contrary to the common-law rule that the personalty is to be used to discharge a mortgage debt encumbering real estate specifically devised to a named devisee, and that common-law rule has not been changed by statute, the devisee may subject to the discharge of the encumbrance various funds, in the following order: first, the general or residuary personal estate; second, lands devised for the express purpose of paying debts; third, lands descended or not devised by the will; and lastly, lands specifically devised charged with debts, and if the encumbrance falls upon this last fund the devisee who calls for the exoneration will be liable to contribute ratably with the other devisees. And in the absence of a contrary expressed intention or a statute, a specific devise of land, mortgaged by the testator to secure his own debt, prima facie imports at common law an intention that such mortgage debt is to be paid out of the general or residuary personal assets, and, if they are insufficient for that purpose, then out of said enumerated funds in the order mentioned and this presumed intention is strengthened when the will directs the executor to pay all just debts and funeral expenses out of the testator's estate.

4. MORTGAGE DEBT: Payable out of Personalty: Common-Law Rule: Abrogated by Statute. The ancient common-law rule that the devisee of specific real estate may call upon the executor to discharge out of testator's personal estate a mortgage placed thereon by testator, after the execution of the will, to secure the payment of his own debt, has been abolished by the statute (Sec. 512, R. S. 1919) declaring that "a charge or encumbrance upon real or personal estate, for the purpose of securing the payment of money or the performance of any covenant or agreement, shall not be deemed a revocation of any will, relating to the same estate, previously executed; but the devises and legacies therein contained shall pass and take effect, subject to such charge or encumbrance." The last clause of the statute is clear, cogent, plain and unequivocal, and it must therefore be assumed that the Legislature intended that a devise of real estate should be "subject to such charge or encumbrance."

5: STATUTE: Rules of Construction: Devise of Mortgaged Land. Where the language of a statute is plain, it must be given effect. The legislative intention is to be ascertained from the words used in a statute, and where its language is plain and admits of only one meaning, auxiliary rules of interpretation fill no useful office. Another rule is that effect is to be given to every word, clause and sentence; and another, that words in common use are to be construed in their natural, plain and ordinary signification. The last clause of the statute pertaining to wills devising or bequeathing encumbered property (Sec. 512, R. S. 1919) really means that the devises and legacies therein contained shall pass and take effect, answerable for, and bound in law and equity with, such charge or encumbrance.

6. MORTGAGE DEBT: Upon Devised Land: Payable out of Personalty: Necessity for Rule: Intention. The ancient common-law rule that lands specifically devised, absent a contrary intention, shall be exonerated from an encumberance thereon out of the general personal estate, is based upon the theory that the general personal estate of the testator is a primary fund out of which his debts are to be paid, and is founded upon a presumption in regard to his intention. The rule grew out of the feudal system of land ownership, whereby lands were handed down from generation to generation by lord to heir, thereby keeping the ownership and succession in the family; but under the modern system of land ownership there is no reason for

adhering to this ancient rule, and the statute (Sec. 512, R. S. 1919) wholly abrogated it in so far as it relates to devises of land encumbered by testator during his lifetime.

**7. MORTGAGE DEBT UPON DEVISED LAND: Direction for Payment out of Personalty: Not Prohibited by Statute.** The statute does not prohibit a testator from directing that an encumbrance on real estate specifically devised to a named devisee shall be paid out of his personal estate. Notwithstanding the statute (Sec. 512, R. S. 1919) says that a devise of encumbered real estate "shall be subject to such charge or encumbrance," it does not prohibit or render invalid a direction in the will that such debt shall be paid out of other assets of the estate. Said statute and Section 555, directing that the true intent and meaning of the testator shall be regarded, are **in pari materia,** are a part of the Statute of Wills, and must be construed together, and when so construed it cannot be held that Section 512 prohibits the testator from directing that an encumbrance upon property specifically devised shall be paid out of other assets.

**8. MORTGAGE DEBT UPON DEVISED REAL ESTATE: Payment: No Expressed Intention: This Will: Direction to Pay Debts out of Personal Estate.** The will in suit did not express a clear intention that a debt secured by a mortgage on real estate specifically devised to a niece should be paid out of other assets of the estate. Testator was an aged bachelor, and made his will in 1911, and died in 1918. By Item 2 he directed that "all my just debts, including funeral and cemetery expenses, be first paid out of my personal estate." By Item 4 he gave to his niece, Fannie Belle Dunn, who for years had been his sole housekeeper, certain real estate, "for her sole and separate use during the term of her natural life, to be hers separate and apart from the debts or control of her present or any future husband, she to have all the rents, income or profits arising therefrom, and if unsold at her death it shall revert to my estate. In the event that sickness or other emergency shall arise that she shall be in needy circumstances she is at liberty to dispose of the same." Item 7 read: "After the payment of my debts and providing for the above bequests, I direct that all of the rest and residue of my estate, both real, personal or mixed, and wheresoever located, be reduced to cash, which is to be divided share and share alike, that is, to my brothers and sisters then living and where any shall have died then the heirs of their body shall receive what their mother or father would have received if living. And Fannie Belle Dunn, my niece, shall share equally with my brothers and sisters in addition to above." A codicil executed in 1913 declared: "It is my intention and purpose to leave no debts or unpaid accounts other than that attending my funeral and cemetery expenses. . . . Therefore, I direct that any claims that may be made against my estate be repudiated by my executor." In 1914 he borrowed $8,000 on his unsecured personal note, and with the money bought a valuable property which is neither mentioned nor devised by the will, and conveyed it and his home place as a gift to said niece, the two being of the aggregate value of $22,000, and therefore the money thus borrowed did not go to swell his personal estate. In 1917 he executed a deed of trust on the lot he had by the will devised to the niece and on another lot, to secure the payment of the balance due on the note made in 1914. **Held,** that Item 2 of the will, being formal and usual in all wills, did not evidence a clear and unmistakable intention that said debt was to be paid out of his personal or residuary estate, but the will is to be interpreted in the light of the conditions existing at the time of his death, from which date alone it speaks, and his intention was that she should take the real estate devised to her subject to and charged with the payment of its proportionate part of the encumbrance placed upon it and the other lot.

**9. WILL: When Effective.** A will takes effect upon the death of the testator, and speaks from that event, and is to be construed in the light of the then existing conditions.

10. ———: **Debts: Formal Clause.** A clause at the outset of a will directing that testator's just debts, including his funeral and cemetery expenses, be first paid out of his personal estate, is formal and usual, and cannot alone be held to clearly and unmistakably express an intention that an encumbrance subsequently placed by testator upon real estate specifically devised to a named devisee is to be paid out of the personal or residuary assets.

11. ———: **Codicil.** A testator has a right to change his will by adding a codicil thereto.

---

Corpus Juris-Cyc. References: **Courts,** 15 C. J., Section 344, p. 950, n. 54, 59. **Liable,** 36 C. J., p. 1132, n. 4, 5. **Statutes,** 36 Cyc., p. 1106, n. 29; p. 1107, n. 30, 31, 32, 33; p. 1114, n. 96; p. 1128, n. 57, 58; p. 1145, n. 6; p. 1146, n. 13, 14, 16, 17, 22; p. 1147, n. 27, 28, 30. **Subject,** 37 Cyc., p. 342, n. 72 New. **Wills,** 40 Cyc., p. 1205, n. 37; p. 1382, n. 69; p. 1386, n. 85; p. 1407, n. 97, 98; p. 1424, n. 85; p. 2063, n. 64; p. 2064, n. 69.

Appeal from Hannibal Court of Common Pleas.—*Hon. John L. Plowman,* Special Judge.

Affirmed.

*Rendlen & White* for appellant.

(1) The cardinal rule of construction and interpretation of wills is that the intention of the testator must be ascertained if possible, and not being in contravention of public policy or rule of law, must be given effect. This is the actual, personal, individual intention of testator, and to this end the will should be construed liberally. 40 Cyc. 1386; Settle v. Shaffer, 229 Mo. 561; Cox v. Jones, 229 Mo. 53; Briant v. Garrison, 150 Mo. 655; Cross v. Hoch, 149 Mo. 325; Jarboe v. Hey, 122 Mo. 341; Reinders v. Koppleman, 94 Mo. 338; Missouri Baptist Sanitarium v. McCune, 112 Mo. App. 332; Morris v. Hall, 102 Mo. App. 449; Smith v. Hutchinson, 61 Mo. 83. The statutes expressly provide that in the construction of a will, due regard must be paid to the true intent and meaning of testator. Sec. 583, R. S. 1919; White v. Crawford, 87 Mo. App. 262; Morris v. Hall, 102 Mo. App. 449. (a) The intention which controls in such construction is that which is manifest either expressly or by necessary implication, from the language of the will itself. The intention must be ascertained from the four corners of the will. 40 Cyc. 1388; Cox v. Jones, 229 Mo. 53; Meiners v. Meiners, 179 Mo. 614; Cross v. Hock, 149 Mo. 325; McMillan v. Farrow, 141 Mo. 55. (b) In case of doubt or ambiguity, the instrument must be viewed in the light of the situation of the testator and the circumstances surrounding him at the time the will was executed. There is no better way than to put one's self as nearly as possible in position of testator at time of the execution of his will. 40 Cyc. 1389; Worden v. Perry, 197 Mo. 569; Grace v. Perry, 197 Mo. 550, 7 Ann. Cases, 948; O'Day

v. O'Day, 193 Mo. 62, 4 L. R. A. (N. S.) 922; Suydam v. Thayer, 94 Mo. 49; Mead v. Jennings, 46 Mo. 91; Metz v. Wright, 116 Mo. App. 631; Cross v. Hoch, 149 Mo. 325; Small v. Field, 102 Mo. 104; Clotilda v. Lutz, 157 Mo. 439; Simmons v. Cabanne, 177 Mo. 336. (c) Words used in the will must be given their plain and ordinary meaning, and if when given such meaning they show a clear intention on part of the testator, they must be given that meaning notwithstanding their effect. 40 Cyc. 1396; Cox v. Jones, 229 Mo. 53; Meiners v. Meiners, 179 Mo. 614; Missouri Baptist Sanitarium v. McCune, 112 Mo. App. 332. (d) General intention of will must prevail over particular intention. The general scheme and plan of the will must be carried out. 40 Cyc. 1393; Rose v. McHose, 26 Mo. 590; Peters v. Carr, 16 Mo. 54. (e) Conditions arising subsequent to the execution of the will and which were probably not foreseen or anticipated by testator at time of writing the will cannot alter the construction of the language of the will. 40 Cyc. 1426. (2) The testator directed that all his debts be paid and that the personal estate first be used to that purpose. This by Item 2 of the will. The residuary legatees were not to receive any part of the estate until "after the payment of my debts and providing for the bequests above." Item 7. There is some personal estate not used in hands of executor. The codicil states testator owed no debts and intended to leave none, clearly again showing unequivocal intention and purpose. The devise for Fannie Dunn's benefit was not intended by him to be burdened, diminished or wiped out, but that she was to have it for life, free from any debt and before the residuary legatees were to receive anything. If Fannie Dunn must take this life estate in the $3500 property producing $30 per month rent and pay the debt, the residuary legatees do not take "after the payment of the debt." Testator clearly designates the general estate shall pay his debts. A provision in a will directing the executor to pay all testator's just debts, includes debts secured by mortgage on land devised. Turner v. Laird, 68 Conn. 198. (3) An encumbrance on specifically devised realty made subsequent to the will does not revoke the will nor the specific devise, but where the intention of the testator does not otherwise provide the devise passes to take effect subject to such encumbrance. Sec. 512, R. S. 1919; Sec. 542, R. S. 1909; 2 Woerner on Admn. (2 Ed.) sec. 497, p. 1112; Peck v. Fillingham, 199 Mo. App. 277, 286. Where the will specifically provides otherwise, or the intent of the testator is manifest from the instrument itself, the real estate devised subject to encumbrance is to be relieved from the mortgage out of the general estate, notwithstanding the Sec. 512, R. S. 1919. Peck v. Fillingham, 199 Mo. App. 286; Knight v. Newkirk, 92 Mo. App. 258; In re Porter, 138 Cal. 618, 72 Pac. 173; Turner v. Laird, 68 Conn. 198; Bulkley v. Seymour, 74 Conn. 459; Towle v.

Swasey, 106 Mass. 100; Brown v. Baron, 162 Mass. 56; In re Patricks' Estate, 72 Neb. 454; DeGraaf v. Cochrane, 47 Miss. 502; In re McKay's Estate, 68 N. Y. Supp. 925; Jacobs v. Button, 79 Conn. 360; Wilts v. Wilts, 151 Iowa, 149; Hayward v. Hayward, 199 Mass. 340. Where after the execution of a will devising realty, testator subjected same to a mortgage, the mortgage must be paid from the personalty, leaving the devisee the land free from the lien. Jackson v. Bevins, 74 Conn. 96; Hennegar v. Deadrick, 54 S. W. 138. Where a will expressly directs the payment of debts from the personal property, a devisee of real property encumbered by testator, subsequent to the execution of the will, is entitled to have the encumbrance discharged from the personal estate, to the detriment of pecuniary and specific legatees. French v. Vradenburg's Exrs., 105 Va. 16, 115 Am. St. 838.

*Berryman Henwood* and *Eby & Hulse* for respondents.

(1) If the intention is violative of some established rule of law, it cannot be recognized or carried out. If it can be gathered from the whole instrument that it was the intention of the testator that Fannie Dunn should have the devise to her under Item 4 of the will, free and clear of the deed of trust placed thereon by the testator, such intention is violative of Sec. 512, R. S. 1919, and cannot be effectuated. Farrar v. Christy, 24 Mo. 468; Briant v. Garrison, 150 Mo. 655; Gannon v. Pauk, 200 Mo. 85; Miller v. Ensminger, 182 Mo. 209; Grace v. Perry, 197 Mo. 550; Wattenbarger v. Payne, 162 Mo. App. 434; Burnett v. Burnett, 244 Mo. 491. (2) There is no language in the will, nor evidence in the record, which shows a clear manifest intent on the part of the testator to give the devise to Fannie Dunn, free and clear of the encumbrance placed thereon by said testator and requiring such encumbrance to be paid out of the residuary assets of the estate. On the contrary it was the manifest intention of the testator that she should take her devise subject to the encumbrance placed thereon by him. (a) The will must be construed as of the date of the death of the testator, and at that time the real estate devised to her was impressed with the lien of the deed of trust, the testator then having only an equity in said real estate, which was the only interest he could or did pass to her by his will. Therefore, the entire interest in said real estate did not pass to or vest in her, but under the provisions of said Section 512, the same was devised to her subject to said deed of trust. (b) A will speaks as of the date of the death of the testator. If between the date of the execution of it and the date of such death conditions have changed, it must be presumed that the testator had such changes in mind when he died, and, in view of his having made no changes in the will, its terms must be interpreted in the light of the conditions

existing at the latter date. Vitt v. Clark, 66 Mo. App. 214; Liggat v. Hart, 23 Mo. 127; Webb v. Archibald, 128 Mo. 299; Mueller v. Buenger, 184 Mo. 476; Williams v. Roberts, 187 S. W. 19; Doneghy v. Robinson, 210 S. W. 655; Peck v. Fillingham, 199 Mo. App. 277.

SEDDON, C.—Action in equity involving title to real estate by respondent, Hannibal Trust Company, the duly appointed and qualified executor under and by virtue of the last will of Henry S. Elzea, deceased, to construe said will and for direction as to its duties thereunder. Defendants are the collateral heirs of the deceased testator and also the residuary legatees under his will. Defendant and appellant, Frances C. Dunn, is the beneficiary of a specific devise under the will and is also one of the residuary legatees. The will of Henry S. Elzea was executed and attested on May 15, 1911, and the parts thereof pertinent to this action are as follows:

"Item 1. I revoke all former wills by me made.

"Item 2. I direct that all of my just debts including funeral and cemetery expenses be first paid out of my personal estate. . . .

"Item 4. I give and bequeath to my niece, Fannie Belle Dunn, for her sole and separate use during the term of her natural life, to be hers separate and apart from the debts or control of her present or any future husband, she to have all the rents, income or profits arising from the property known as No. 1206 Broadway Street, Hannibal, Mo., if unsold at her death it shall revert to my estate. In the event that sickness or other emergency shall arise that she shall be in needy circumstances she is at liberty to dispose of the same. . . .

"Item 7. After the payment of my debts and providing for the above bequests, I direct that all of the rest and residue of my estate, both real, personal or mixed, and wheresoever located, be reduced to cash, which is to be divided share and share alike, that is, to my brothers and sisters then living, and where any shall have died, then the heirs of their body shall receive what their mother or father would have received, if living. And Fannie Belle Dunn, my niece, shall share equally with my brothers and sisters in addition to above."

Appended to the will, as a part thereof, is a codicil, executed and attested on October 15, 1913, as follows: "It is my intent and purpose to leave no debts or unpaid accounts other than that attending my funeral and cemetery expenses, as I have supplied my home where I now reside, and which has been my domicile for years, with more than enough to support me in luxury. I have annually supplied the principal foodstuffs—such as flour, sugar, coffee, lard and meats in quantities to last for months—and have kept up the household expenses regularly for years, in which Fannie Belle Dunn has been in domestic control and charge. Therefore, I direct that any claims

that may be made against my estate be repudiated by my executor and, if any beneficiary named in the body of this will on the reverse side hereof shall make or file any claim for service rendered, or make demand for recompence, they shall be barred from receiving any bequest of or other benefit from my estate, direct or indirect.''

The testator died on January 24, 1918, and the will and codicil were duly probated on January 28, 1918. Appellant Frances C. Dunn is the same person referred to in the will as Fannie Belle Dunn.

The testator, Henry S. Elzea, was a bachelor and died at the age of eighty-six years, owning a substantial amount of property, real and personal. His estate is solvent and no rights of general or unsecured creditors are involved herein. Appellant, Frances C. Dunn, is a niece of the testator, who, according to her testimony, had reared her from the time she was a child of the age of two and one-half years. She resided with testator until she was married, after which she resided in Hannibal for a while and then in St. Louis for nearly seven years, when she returned to Hannibal and resided with testator continuously for thirteen years until his death. Testator and appellant made their home in a large house of nine or more rooms and there was no other person about the home place. Appellant ''looked after the chores and tended to all the duties in managing and looking after the household.''

On December 5, 1914, the testator borrowed the sum of $8,000 from the German American Trust Company, afterward the American Trust Company, evidencing the loan by his personal, unsecured note for said amount. With the proceeds of that loan and other moneys he then had in the bank, testator purchased, on or about December 5, 1914, for the sum of $11,000, certain real property, particularly described as all of Lot 4 and part of Lot 3 in Henry W. Collins' Subdivision of out-lots 96 and 97 in the city of Hannibal, and referred to in the record and herein as the Courtney property. It was agreed by the parties at the trial that the reasonable market value of the Courtney property is $12,000 and that the reasonable income or rental therefrom is $115 per month. It was also admitted that testator's home place, upon which he and appellant resided, had a reasonable market value of $10,000. When testator procured the loan of $8,000, on December 5, 1914, from the German American Trust Company, his property was unencumbered and the trust company believed his personal, unsecured note to be good. Subsequently, Henry S. Elzea, on or about December 28, 1914, by deed of gift, conveyed to appellant the home place, together with twenty or twenty-five acres adjoining, and also the Courtney property. The validity of that conveyance, which was controverted by the heirs of Henry S. Elzea, was upheld by this court (Elzea v. Dunn, 297 Mo. 690), and judgment was ordered to be entered in favor of Frances

C. Dunn, the appellant herein. Upon the trust company learning of that conveyance, its board of directors ordered its secretary and treasurer to request and require Henry S. Elzea to secure the payment of his unsecured note for $8,000. Pursuant to said request, Henry S. Elzea executed and delivered to one O. A. Brown, secretary and treasurer of the American Trust Company, his promissory note, dated May 1, 1917, for $8,100 (being the principal and accrued interest of the $8,000 unsecured note), and a deed of trust of even date securing payment of said $8,100 note. By said deed of trust, Henry S. Elzea conveyed to Joseph Bassen, trustee for the holder of said note, a tract of land described as Lot 10 of Smashey's Subdivision of out-lot 96, north of Market Street in the city of Hannibal, except a strip three feet wide off the east side thereof and also except a strip six feet wide off the north end thereof, being the property mentioned as No. 1206 Broadway Street in Item 4 of the will of Henry S. Elzea and referred to in the record and herein as the Griswold property, and also a tract of land described as Lot 6 in H. W. Collins' Subdivision, referred to in the record and herein as the Hutchinson Carriage Shop property. The note secured by said deed of trust was endorsed by O. A. Brown, the payee, and delivered to the American Trust Company, which is the owner and holder thereof. Henry S. Elzea subsequently paid to the holder of the note the sum of $1,500, which was applied and credited upon the principal of the note. On February 28, 1918, the American Trust Company presented said note in the Probate Court of Marion County as a demand against the estate of Henry S. Elzea and said demand was allowed for $6,666, the amount of principal and interest then due thereon, and classified as a fifth class demand. The note not having been paid and nine months having elapsed after the death of Henry S. Elzea, the trustee named in said deed of trust advertised the property described therein for sale under the terms of said deed of trust. Thereupon, appellant, through her attorneys, notified the respondent Hannibal Trust Company, executor under the will of Henry S. Elzea, in writing, that the Griswold property, known as No. 1206 Broadway Street, was specifically devised to appellant, Frances C. Dunn, and demanded that said executor sell all of the real estate comprising the residuary estate and pay off the debt represented by said note and deed of trust out of the proceeds from the sale of the residuary estate, under the penalty of being held liable otherwise for all attorney's fees, expenses, losses and damages of any kind or character.

On August 4, 1919, the Hannibal Trust Company, American Trust Company, Frances C. Dunn and the several collateral heirs and residuary legatees of Henry S. Elzea entered into a written agreement, whereby it was agreed that the Hutchinson Carriage Shop prop-

erty shall be sold at private sale and the net proceeds therefrom applied upon the note owned and held by the American Trust Company; that the advertisement of the trustee's sale shall be withdrawn; that the Hannibal Trust Company, as executor, shall bring a suit to construe the Henry S. Elzea will in order to determine the proportionate part, if any, the Griswold property devised to Frances C. Dunn by Item 4 of said will shall bear of the total indebtedness due on said note, it being contended by appellant, Frances C. Dunn, that said Griswold property is not liable for any portion of said indebtedness, and by defendant collateral heirs and residuary legatees of testator that said Griswold property should bear its proportionate part of said indebtedness; that Frances C. Dunn shall convey said Griswold property to said Hannibal Trust Company, as trustee, for the purpose of enforcing the terms of said agreement, and, if said Frances C. Dunn shall fail or refuse to pay the amount of indebtedness, if any, adjudged to be borne by said Griswold property, within ninety days after the final determination of this action, said Griswold property shall be sold by said trustee and the proceeds distributed in accordance with the terms of the agreement; and that the net sum for which the Hutchinson Carriage Shop property shall sell at private sale shall be taken and considered as the fair market value thereof and the net sum for which said Griswold property shall sell shall likewise be taken as its fair market value. Thereupon, respondent, Hannibal Trust Company, instituted this action as provided by the terms of said agreement. Subsequently, the Hutchinson Carriage Shop property was sold at private sale for the net sum of $6,100 and the trial court found in its decree that the Griswold property was worth $4,500 at the time of testator's death. The appraised value of the personal property belonging to the estate of Henry S. Elzea, as shown by the inventory and appraisement filed in the probate court, in evidence, is $1908.19, and the total amount of the claims or demands presented and allowed against said estate, including the claim of American Trust Company, is $7,536.32. The trial court, by its decree, also found that testator, at the time of his death, owned certain real estate, other than the Griswold and Hutchinson Carriage Shop properties, worth approximately $5,350, but subject to a mortgage indebtedness of $2,000.

The trial court entered a final decree or judgment to the effect that: "Unless the said Frances C. Dunn shall pay to said executor such sum as is herein adjudged to be due from said Griswold property, on account of said deed of trust debt held by said American Trust Company, within ninety days after the final determination of the same, by the court herein, said Hannibal Trust Company, as such executor shall, in accordance with the terms of the written agreement entered into by all of the parties hereto and mentioned and

referred to in said interlocutory decree, and the order of this court, proceed to sell said Griswold property mentioned in said decree, and shall distribute the proceeds of such sale as follows: that is to say, the said Hutchinson Carriage property having been sold for $6100, to that sum shall be added the net amount realized from the sale of said Griswold property. The total amount due on said debt of said American Trust Company on September 9, 1919, the date of the application of said net proceeds of the sale of said Hutchinson Carriage property, being the sum of $7287, the proportion which the latter amount bears to the total sale price of both said Hutchinson Carriage property and said Griswold property shall be ascertained, and that proportion of the sale price of said Griswold property shall be retained by said executor, Hannibal Trust Company, as a part of the residuary estate of said Henry S. Elzea, deceased, and the balance remaining of the proceeds of said sale of said Griswold property shall be turned over and paid by said executor to the said Frances C. Dunn, to be held by her as and for and upon the same terms and conditions as the real estate devised to her in Item 4 of the will of said Henry S. Elzea, deceased. It is further ordered and adjudged by the court that the costs incurred in this proceeding be taxed against and paid by said executor out of the funds of the estate of the said Henry S. Elzea, deceased.'' Defendant Frances C. Dunn appeals to this court from the final judgment entered below.

I. Appellant insists that the Griswold property, described as No. 1206 Broadway Street in the city of Hannibal and specifically devised to her by Item 4 of the Elzea will, should

**Mortgage Debt upon Land: Payment out of Personalty.** be exonerated from the payment of the mortgage debt placed thereon by the testator. By her answer, which is in the nature of a cross-bill, appellant pleads that ''Henry S. Elzea . . . intended and provided in and by said will that she, this defendant, should have said real estate described herein, being all of Lot ten of Smashey's Subdivision of out-lot 96 in the city of Hannibal, Missouri, save the strips taken therefrom, and known as number 1206 Broadway Street, Hannibal, Missouri, being so described in said will, freed and clear from any and all debts of him the said Henry S. Elzea, testator, and that before any of his residuary estate should pass to his residuary legatees, said property and real estate so specifically devised to this defendant, Frances C. Dunn, should be so provided for and to this defendant, Frances C. Dunn, free and clear of all debts, so that she might have the enjoyment, right, profit, income and fee therefrom and thereto unencumbered and free from any debt or charge or lien whatsoever; that said indebtedness now due said American Trust Company and secured in part by the deed

of trust described in plaintiff's petition should be paid from the personal and the general and residuary estate and, before the residuary legatees receive any part of said residuary estate, said specific devise must be made clear and free and so provided to and for this defendant, Frances C. Dunn, all as was the intention and purpose of said testator, Henry S. Elzea, deceased, as expressed, intended and provided in his said last will.'' The prayer of said answer and cross-bill asks the court ''to order, decree and adjudge that the said property devised to her by Item four of the last will and testament and as otherwise described herein and in plaintiff's petition described be hers freed from any debt, claim or demand against the estate of Henry S. Elzea, including that of the American Trust Company which is secured by said deed of trust thereon; that said claim and demand and note of the defendant, American Trust Company, so secured by deed of trust, be ordered paid from the personal and residuary estate of said Henry S. Elzea, deceased, and no lien by reason of such payment be impressed or decreed upon or against said specific devise so made and given in said testator's will to this defendant, and further this defendant asks for all appropriate and proper decrees and judgments herein as may be meet and proper and further she asks for general relief.'' Hence, she assigns error in the entry of the final decree or judgment, which requires her, as the devisee of said property, to contribute proportionately to the payment and discharge of the mortgage indebtedness. She contends that the cardinal rule of construction and interpretation of wills is that the intention of the testator must be ascertained, if possible, from the four corners of the will; that the intention of the testator controls such construction, if such intention is manifest, either expressly or by necessary implication, from the language of the will itself; that the language of the will must be given its plain and ordinary meaning; that the general scheme and plan of the will should be carried out; that, in case of doubt or ambiguity, the instrument must be viewed in the light of the situation of the testator and the circumstances surrounding him at the time the will was executed and not at the time of the death of testator; and that, in order to effectuate such intention and purpose of the testator, the will must be given a liberal construction.

The general principle or rule in the construction of wills, namely, that the intention of the testator, if not in conflict with public policy or some established rule of law, must control, apparently is not disputed by respondent. In fact, that general principle is recognized and embodied in the statute of this State (Sec. 555, R. S. 1919), wherein it is required that ''all courts and others concerned in the execution of last wills shall have due regard to the directions of the

will, and the true intent and meaning of the testator, in all matters brought before them.''

At common law, the personalty being regarded as the primary fund for the payment of debts, the devisee of real property may call upon the executor to exonerate the land by discharging the mortgage debt out of the testator's personal estate; this upon the theory that the personal estate had derived the benefit of the money for which the mortgage was given. If no intention is inferable from the will indicating a different course, it seems to result from the authorities in jurisdictions following the common-law rule, and wherein that rule has not been changed by statute, that the devisee of mortgaged real estate may subject to the discharge of the encumbrance various funds, in the following order: first, the general or residuary personal estate; next, lands devised for the express purpose of paying debts; then, lands descended or not devised by will; and, lastly, lands specifically devised charged with debts; and if the charge falls upon the last of these classes, the devisee himself, who calls for the exoneration, will be liable to contribute ratably with the other devisees. [3 Woerner on American Law of Administration (3 Ed.) sec. 494, pp. 1723, 1725; 2 Jarman on Wills, 635; 1 Underhill on Law of Wills, secs. 384, 387; Borland on Wills and Administration, sec. 207.] So it has been held, in those states following the common-law rule, that, in the absence of a contrary intention on the part of the testator, a specific devise of land, mortgaged by the testator to secure his own debt, prima facie imports an intention that such mortgage debt shall be satisfied out of the general or residuary personal assets, and, if they are insufficient for that purpose, then out of the above enumerated classes of property in the order mentioned; and this presumed intention is fortified when the will directs the executor to pay all just debts and funeral expenses out of testator's estate, the mortgage indebtedness, created by the act of the testator during his life, being regarded as a debt within the meaning and purport of such direction of the will. [Turner v. Laird, 68 Conn. 198; Bulkley v. Seymour, 74 Conn. 459; Jackson v. Bevins, 74 Conn. 96; Jacobs v. Button, 79 Conn. 360; Towle v. Swasey, 106 Mass. 100; Brown v. Baron, 162 Mass. 56; Patrick v. Patrick, 72 Neb. 454; Wilts v. Wilts, 151 Iowa, 149; Hayward v. Hayward, 199 Mass. 340; French v. Vradenburg, 105 Va. 16.]

However, even in England there arose a reluctance against the rigid application of the common-law rule under some conditions, and it has there been changed by statute, as well as in some of our own American states. By the English statute known as Locke King's Act (17 and 18 Vict. c. 113), and the amendment thereto passed in 1867 (30 and 31 Vict. c. 69), the rule that the devisee of property

mortgaged by the testator may call upon the executor to exonerate the devise by the payment of the mortgage debt out of the personalty has been changed, so that, in the absence of a contrary intention signified by the testator, the property so devised shall be primarily liable for the payment of all mortgage debts, or liens for unpaid purchase-money, with which it stands charged, each part according to its value bearing a proportionate part of the debt; and the direction of the testator that his debts shall be paid out of the personal estate shall not be deemed a declaration of intention contrary to the rule established by the act, unless he use other and further words declaring and showing such intention. [3 Woerner on Administration (3 Ed.) sec. 497.] A similar statute exists in the State of New York to the effect that, whenever any real estate subject to a mortgage executed by an ancestor or testator shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, without resorting to the administrator or executor, unless there be an express direction in the will of such testator that such mortgage be otherwise paid or discharged. In view of the New York statute, it is held in that State that the usual direction of a testator to the executor to pay all debts and sums of money which the testator should owe at the time of his death is not sufficient to signify the intention of the testator to modify the statute and throw the discharge of the mortgage upon the general estate, but the devisee must take the land *cum onere.* [Taylor v. Wendel, 4 Bradf. 324.] The statute is held to apply to mortgaged realty which is devised to the widow in lieu of dower, and she is not entitled, on foreclosure of the mortgage, to the value of the devised real estate out of the general estate. [Meyer v. Cahen, 111 N. Y. 270.] Likewise, in New Jersey, the common-law right of the heir or devisee to call upon the personalty to discharge a mortgage placed on the real estate by decedent has been abolished by a statute which makes the mortgaged land the primary fund to pay the mortgage debt. [Smith v. Wilson, 79 N. J. Eq. 310.] A somewhat similar statute seems to have been enacted in Oregon. [Howe v. Kern, 63 Ore. 487.]

Following the trend of other American states and of England, our own State has enacted a statute which seems to change or modify the ancient common-law rule still in effect in some other jurisdictions. The statute (Sec. 512, R. S. 1919; Sec. 542, R. S. 1909) provides: "A charge or encumbrance upon any real or personal estate, for the purpose of securing the payment of money or the performance of any covenant or agreement, shall not be deemed a revocation of any will, relating to the same estate, previously executed; *but the devises and legacies therein contained shall pass and take effect, subject to such charge or encumbrance.*" (Italics ours.)

Although the statute in question was originally enacted and approved on March 10, 1845 (R. S. 1845, p. 1079), diligent research on our part leads us to believe that it has never been construed by this court, and, in fact, we find but a single decision of any of our appellate courts in which the statute is even referred to or discussed. That decision is one of the St. Louis Court of Appeals (Peck v. Fillingham, 199 Mo. App. 277, 202 S. W. 465), in which that court, referring to the statute, said: "When we come to examine Section 542, Revised Statutes 1909, which provides that a charge or encumbrance upon any real or personal estate for the purpose of securing the payment of moneys or the performance of any covenants or agreements, shall not be deemed a revocation of any will relating to the estate previously executed; but the devises and legacies therein contained shall pass and take effect, subject to such a charge or encumbrance, we are of the opinion and so hold that unless the will specifically provides otherwise or the intent of the testator is manifest from the instrument itself that real estate devised subject to an encumbrance shall have the amount of the encumbrance paid off out of the assets of the estate, such real estate passes to the devisee subject to such encumbrance."

However, from a close analysis and study of that opinion, we are irresistibly drawn to the conclusion that the above quoted language of that court is merely *obiter dictum,* for it clearly appears from the opinion that the only question there presented for decision was whether a probate court has original jurisdiction to hear and determine a claim or demand which involves the application of the doctrine of subrogation, which is cognizable only in a court of equity. Therefore, the discussion of the statute in that opinion was wholly beside the question decided therein.

In 3 Woerner on American Law of Administration (3 Ed.) sec. 497, p. 1733, the learned text-writer remarks: "In some of the States it is provided that the encumbrance of any land devised shall not be deemed a revocation of the devise, but the devisee shall take the same subject to the encumbrance. These words, on first impression, might seem to imply that the *onus* of discharging the encumbrance is thereby thrown upon the land. No adjudications of the point have come to the knowledge of the writer, but a number of considerations suggest that the Legislature meant simply to abrogate the rule existing at common law, whereby an encumbrance of lands previously devised worked a revocation of such devise. Such statutes are found in California, Kansas and Missouri." And, in a footnote, the writer adds: "But since this original text as above was written, the case of Peck v. Fillingham, 199 Mo. App. 277, 202 S. W. 465, seems to hold that the real estate devised passes to the devisee subject to encumbrance, that is to say, the devisee cannot call on the personalty

to disencumber his devised property. The court presents little or no argument for its conclusion.'' So it will be readily seen that we have little, if any, aid in the shape of adjudicated cases in arriving at the legislative purpose or intent in the enactment of the statute.

If, as suggested by Mr. Woerner in the quoted text, ''the Legislature meant simply to abrogate the rule existing at common law, whereby an encumbrance of lands previously devised worked a revocation of such devise,'' then it would seem equally as reasonable to believe that the Legislature would have enacted the statute by including and adopting only the first clause thereof, which would have fully accomplished the purpose suggested by Mr. Woerner, and would not have appended thereon the last or concluding clause in the imperative form and language, ''but the devises and legacies therein contained shall pass and take effect, *subject to such charge or encumbrance.*'' The last clause of the statute is clear, cogent, plain and unequivocal, and we must therefore assume, in the construction of the statute, that the Legislature intended that the statute should operate upon encumbered devises and legacies in the manner and effect plainly designated by the statute, namely, that such devises and legacies shall be ''subject to such charge or encumbrance.''

While the fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature, such intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts; otherwise, they would be assuming legislative authority. [36 Cyc. 1106.] As said by this court, en Banc, in Grier v. Railway Co., 286 Mo. l. c. 534: ''The primary rule for the interpretation of statutes is that the legislative intention is to be ascertained by means of the words it has used. All other rules are incidental and mere aids to be invoked when the meaning is clouded. When the language is not only plain, but admits of but one meaning, these auxiliary rules have no office to fill. In such case there is no room for construction.'' To like effect are Clark v. Railroad Co., 219 Mo. l. c. 534, and Betz v. Kansas City Southern Ry. Co., 314 Mo. 390, ruled by this division of this court on May 24, 1926.

Another cardinal rule in the construction of statutes is that effect must be given, if possible, to every word, clause and sentence. [36 Cyc. 1128.] That rule has been frequently recognized and followed by this court. [Strottman v. Railway Co., 211 Mo. 227; Bank v. Ripley, 161 Mo. l. c. 131; State ex rel. v. Harter, 188 Mo. l. c. 529.]

Again, in the interpretation of statutes, words in common use are to be construed in their natural, plain and ordinary signification. [36 Cyc. 1114.] The words ''subject to'' are defined by lexicographers as meaning ''liable,'' and the word ''liable'' is defined as

"bound or obliged in law or equity; responsible; answerable."
[Webster's New International Dictionary; Century Dictionary.]
Paraphrasing the last clause of the statute according to the natural
and ordinary signification or meaning ascribed to the words used
therein, it would read "but the devises and legacies therein contained
shall pass and take effect, answerable for, and bound in law or equity
with, such charge or encumbrance."

Furthermore, as we have heretofore said, the ancient common-law
rule that lands specifically devised, absent an intention to the con-
trary, shall be exonerated from a charge or encumbrance thereon out
of the general personal estate of the testator is based upon the theory
that the general personal estate of the testator is the primary fund
out of which his debts are to be paid and is founded upon a presump-
tion in regard to the testator's intention. No doubt the common-law
rule grew out of the feudal system of land ownership in England,
whereby landed estates were handed down from generation to genera-
tion by lord to heir, thereby keeping the family ownership and
succession intact. Under the modern system of land ownership,
which has always been in effect in this State, there is little, if any,
reason for continuing the ancient common-law rule in effect. The
reason for the complete abrogation of the ancient common-law rule
is perhaps more clearly and succinctly expressed in Smith v. Wilson,
79 N. J. Eq. l. c. 315, wherein it is said: "The general rule under
consideration accorded with the policy of the English law which
protected the heir and had tender regard for landed estates by which
families were sustained and family succession was promoted. In
modern times, and especially in America, land occupies a very differ-
ent position from that which it occupied under the old English
system. Men buy lands and put mortgages upon them, sell their
equities, and oftentimes deal with the lands which they have mort-
gaged as the primary fund out of which payment of the debt is to
be made. Great fortunes which perpetuate families are perhaps
handed down more frequently in the form of personal property than
in the form of land." Bearing in mind the changed and wholly
different system of land ownership effective in this State at the time
of the enactment of our statute and the absence of necessity for
the preservation of family succession, it may well be ruled, we think,
in further view of the plain, clear and unambiguous language of our
statute and giving effect to its every word and clause and ascribing
to its words their usual and ordinary meaning, that the Legislature
intended thereby to completely and wholly abrogate the ancient
common-law rule respecting devises of lands encumbered by the
testator during his life.

II. Respondent, on the other hand, contends that the foregoing statute (Sec. 512, R. S. 1919) is controlling of the instant action and,

**Prohibitory Statute.** even though the Elzea will may be construed and held to express the intention of the testator that the devise to appellant shall be exonerated from payment of the mortgage debt, nevertheless, such intention should not and cannot prevail in the face of the express provisions of the statute. In support of this contention, it is urged that, if the intention of the testator is violative of an established rule of law or public policy, whether statutory or otherwise, it cannot be recognized or carried out. Respondent cites a line of decisions in this State to the effect that, where the intent of the testator, as ascertained from a consideration of the will, contravenes plain and settled rules of law or violates the policy of the statutory law of this State, it is the duty of the courts to respect the intention of the Legislature or the established public policy of the State and to disregard the intent of the testator. A study of the cited cases, however, discloses that they deal largely with our statute which declares, in effect, that estates tail shall not exist and which prescribes the disposition of such estates when attempted to be created. In other words, the cited cases involve wills or conveyances which attempt to create estates *prohibited* by the statutory law of this State.

We do not question or doubt the correctness of those decisions, for it cannot be doubted that, if a will attempts to create an estate expressly *prohibited* by statute or violates the rule against perpetuities, which are prohibited by force of judicial decisions which have gradually established said rule, then the intent of the testator, although plainly expressed in the will, must be disregarded, for such intent clearly contravenes established rules of law or public policy. But the statute herein involved does not *prohibit*, or attempt to prohibit, a testator from expressly providing by will for the exoneration of lands specifically devised from a charge or encumbrance thereon out of his residuary personal estate or other lands, whether they be devised or descended. On the other hand, our Statute of Wills, of which the particular statute in question is a part, expressly provides, in another section thereof (Sec. 555, R. S. 1919), that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." The two statutes, or rather the two sections of the Statute of Wills, are *in pari materia* because they relate to the same class of persons or things. [36 Cyc. 1147.] It is an established principle that all statutes are presumed to be enacted by the Legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed as a part of a general and uniform system of juris-

prudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also in connection with other statutes on the same subject, and, even where two statutes are in apparent conflict, they should be so construed, if reasonably possible, as to allow both to stand and to give force and effect to each. [36 Cyc. 1146.] We, therefore, cannot assent to the argument advanced by respondent that, even though the will may be held to express the intention of the testator that the mortgage indebtedness, which is a charge against the Griswold property specifically devised to appellant, shall be discharged out of the other properties of his estate, such intention cannot prevail in the face of the express provisions of Section 512, Revised Statutes 1919. It remains then for us to determine whether the language of the will, having in mind all of the facts and circumstances in evidence, clearly manifests the intent of the testator that the appellant shall take the land devised to her by Item 4 of his will free from the encumbrance which he placed thereon subsequently to the execution of his will and codicil.

III. It is insisted by appellant that the will clearly and unmistakably manifests the intention of the testator that the encumbrance upon the Griswold property specifically devised to her by Item 4 of said will shall be paid or discharged out of testator's residuary estate. Appellant relies upon the language of testator used in Items 2, 4 and 7 of the will and the codicil thereto. Item 2 directs that all of testator's just debts, including funeral and cemetery expenses, be first paid out of his personal estate. Item 4 devises to appellant a life estate in the Griswold property, known as No. 1206 Broadway Street, appellant to have all the rents, income or profits therefrom, coupled with an absolute power of disposition of said property in fee in the event that sickness or other emergency shall arise so that appellant shall be in needy circumstances, and, if unsold at her death, it shall revert to the testator's estate. Item 7 provides that, "after the payment of my debts and providing for the above bequests" (including Item 4 of said will), then the residuary estate, both real and personal, shall be reduced to cash and divided, share and share alike, among the testator's brothers and sisters, if living, and, if any shall have died, then to the heirs of the body of such as shall have died, with the further provision that appellant shall share in the residuary estate equally with testator's brothers and sisters. The codicil recites: "It is my intent and purpose to leave no debts or unpaid accounts other than that attending my funeral and cemetery expenses . . . . Therefore, I direct that any claims that may be made against my estate be repudiated by my executor."

We do not regard the language of the testator used in Item 2 of

*[margin: Proportionate Part of Encumbrance.]*

his will, directing that all of "my just debts, including funeral and cemetery expenses, be first paid out of my personal estate," as evidencing a clear and unmistakable intention on his part that the mortgage indebtedness shall be paid out of his personal or residuary estate, for the reason so clearly stated in the Estate of Porter, 138 Cal. l. c. 622, wherein that court said: "Of course, in any case, the testator may direct that the mortgage debt be paid, or use such words as clearly show such intent. Some stress is laid upon the direction in the first clause of the will to 'pay all my just debts,' but in this case we attach little importance to the words used in the formal manner in which they are used. They are much like the formal, meaningless terms of endearment and pious phrases printed in the formal part of blanks for making wills." A similar thought is expressed in Meyer v. Cahen, 111 N. Y. l. c. 274, where that court said: "The fact that the testator in the first clause of his will directed the payment of his debts as soon after his decease as conveniently could be done we do not regard as material. Such a clause is usually a purely formal one and works no change in the disposition of the testator's property."

It seems to be the general and well established rule, in respect to the testator's intention and from the very nature of the testamentary disposition of property, that the will speaks from the time of the testator's death. [3 Woerner on Administration (3 Ed.), sec. 420, p. 1396.] This rule is recognized by the appellate courts of this State. In Vitt v. Clark, 66 Mo. App. l. c. 217, it is said: "The following propositions are elementary: The testator's will speaks as of the date of his decease. If between the date of the will and the date of decease conditions have changed, it must be presumed that these changes were in the testator's mind when he died, and, in view of the fact that he made no changes in the will, the meaning of terms used therein must be interpreted in the light of conditions existing at the latter date."

In the early case of Liggat v. Hart, 23 Mo. l. c. 138, this court said: "But it is said that we are bound by a legal rule of construction, which constrains us to consider a will in reference to the real property, when a contrary intent does not appear on the face of it, as referring to the time it was made, although, as to personal property, it speaks from the death. We all know that this is purely an artificial rule, and that, in a majority of the cases to which it is applied, it defeats the intention of the testator. Men know that their wills are not to take effect until they die, and they make them for the purpose of fixing the distribution of their property *from that moment,* and it was under this view of the subject that in the statute of 1 Vic. ch. 26, as well as in some recent American statutes, it is declared that the will shall be considered as speaking from the

moment of the death of the testator, unless a contrary intention appear.''

In Webb v. Archibald, 128 Mo. 299, l. c. 304, this court, en Banc, adverting to Liggat v. Hart, supra, said: ''Since that decision, construing the first section of our Statute of Wills, there never has been any question in this State but that the language of a will is to be construed as of the date of the decease of the testator, unless the contrary appears to have been his intention, and that the will operates upon all the estate of the testator, real and personal, at the time of his decease, so far as its terms are applicable, unless the intention of the testator appears to be otherwise. [1 Redfield on Wills (3 Ed.) chap. 9, sec. 1.]'' This well established rule of construction is reaffirmed by this court in Mueller v. Buenger, 184 Mo. 458, and Williamson v. Roberts, 187 S. W. 19.

It remains, therefore, for us to apply the foregoing rule of construction, thoroughly established in this State, to the will in question, having in mind the change in conditions which occurred between the date of the execution of the will and codicil and the date of testator's death, in order that we may determine the question whether the will, viewed from its four corners, clearly and unmistakably speaks or manifests the intent of the testator that the mortgage debt with which the devised property was charged shall be paid or discharged out of the testator's residuary estate. The will was executed on May 15, 1911, and the codicil was executed on October 15, 1913. On those respective dates, it seems reasonably clear from the record that the testator owed no substantial debts. However, on December 5, 1914, more than a year after the execution of the codicil, the testator borrowed from the German American Trust Company the sum of $8,000, for which he gave his personal, unsecured note. With this sum and other moneys he then had, he immediately purchased the real estate known as the Courtney property, for which he paid approximately $11,000. Within only a few days thereafter, on December 28, 1914, he conveyed this Courtney property, together with his home place and some twenty acres adjoining the same, to appellant by deed of gift. It appears from the record that the value of the properties thus conveyed to appellant, as a gift, aggregated $22,000, or more. The Courtney property so conveyed is neither mentioned nor devised by the will. Bear in mind that the $8,000 borrowed by testator after the execution of his will and codicil did not go to the enhancement or enlargement of testator's personal estate, for it was immediately invested in the purchase of the Courtney property, which, in turn, was almost immediately bestowed upon appellant as a gift to her. Hence, although testator by his codicil, executed a year previously, had expressed the intent and purpose to leave no debts or unpaid accounts, other than his funeral and

cemetery expenses, and had even gone so far as to direct that any claims that might be made against his estate be repudiated by the executor nominated in his will, he did in fact create a very substantial debt, which he must have known would be payable out of his estate, if not paid before his death, and which his executor had no lawful power or right to repudiate.  Thereafter, on May 1, 1917, testator was required by the American Trust Company, the holder of his unsecured note, to secure the payment of the money loaned to him, and thereupon he executed a new note for $8,100 and secured the payment thereof by executing and delivering a deed of trust upon the Griswold and Hutchinson Carriage Shop properties.  At the time the testator executed said deed of trust, he knew the provisions and terms of his will and that he had thereby devised the Griswold property to appellant.  He also knew that the money borrowed by him, to secure the payment of which he subsequently executed the deed of trust in question, had been used in the purchase of the Courtney property, which he shortly conveyed without encumbrance, together with other properties, aggregating in value more than $22,000, to appellant as a gift.  Having bestowed upon appellant as a gift property of the value of $22,000 or more, entirely free from encumbrance or charge of any kind whatsoever, he may well have thought that it was only fair and right that she should take the Griswold property devised to her by Item 4 of his will subject to and charged with the payment of its proportionate part of the encumbrance placed on that property and the Hutchinson Carriage Shop property by the testator. He must also be held to know that a then existing statute of this State provided that ''a charge or encumbrance upon any real or personal estate, for the purpose of securing the payment of money . . . , shall not be deemed a revocation of any will, relating to the same estate, previously executed; but the devises and legacies therein contained shall pass and take effect, subject to such charge or encumbrance,'' for a testator is bound to know the existing statutes affecting testamentary dispositions.  Had he intended that appellant should take the Griswold property free from, and relieved of, the deed of trust he was executing, or had executed, he could, and doubtless would, have added a codicil to his will so declaring and manifesting such intention.  He had the right to change his will, had he so desired.  This right was recognized by us in the former case of Elzea v. Dunn, 297 Mo. 1. c. 710, wherein we said: ''Mr. Elzea had a right to change his will, either by making a new will, or by conveying by deed the property disposed of by his will.  That his will was not considered by him, after he made the deed in suit (of the Courtney property) to Mrs. Dunn, as constituting a fixed provision for her, is shown by the fact that he included the property specifically devised to her thereby for her support (the Griswold property) in the

deed of trust made by him on the 11th day of May, 1917, to secure the $8,000 he borrowed to pay for the Courtney property, which was included in his deed to her.''

We do not find the will to clearly and unmistakably manifest the intention of the testator that the Griswold property specifically devised to appellant shall pass to her free from the encumbrance or charge placed thereon by the act of testator subsequently to the execution of his will, or that the intention is manifested by the will that the encumbrance shall be discharged out of testator's residuary estate. It follows that appellant must take the Griswold property subject to its proportionate share of such charge or encumbrance, as provided by the statute. [Sec. 512, R. S. 1919.]

We think the learned trial chancellor was right in entering the judgment appealed from, and, finding no reversible error in the record, it follows that the judgment *nisi* must be affirmed, and it is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.