## ORIENT INS. CO. v. SKELLET CO.

Circuit Court of Appeals, Eighth Circuit. October 31, 1928.

No. 8140.

Nathan H. Chase, of Minneapolis, Minn., for appellant.

LeRoy Bowen, of Minneapolis, Minn. (Ivan Bowen, of Minneapolis, Minn., on the brief), for appellee.

Before LEWIS, Circuit Judge, and PHILLIPS and SANBORN, District Judges.

LEWIS, Circuit Judge. ▮ Skellet Co. maintained a public storage warehouse. It obtained from Orient Ins. Co. a fire policy insuring it against loss or damage by fire, "On merchandise and property of every description, not owned by the assured, for which they may be legally liable, all while contained in the ten-story, fireproof building, situate and being No. 247–253 Sixth Avenue South, Minneapolis, Minnesota." The policy, aside from the subject-matter insured, was in the terms prescribed by the state statute, and after the fire occurred the insured had its claimed loss or damage assessed by arbitrators, the insurer refusing to participate in the proceeding. It denied liability and objected to arbitration. The State Supreme Court had held that under the Minnesota standard fire policy the insured had the right to have the amount of its loss settled in that way, even though the insurer denied liability and refused to participate in the arbitration. Abramowitz v. Continental Ins. Co., 170 Minn. 215, 212 N. W. 449. We had the statute under consideration in Continental Ins. Co. v. Titcomb (C. C. A.) 7 F.(2d) 833, and held, following McQuaid Market House Co. v. Home Ins. Co., 147 Minn. 254, 180 N. W. 97, that the statute called for a common-law arbitration as distinguished from an appraisement; and we further held that although the statute prescribed the terms of the policy it was contractual when issued, bound the parties as to the mode of procedure in ascertaining the loss, but did not oust the courts of jurisdiction on the question of liability of the insurer. In a late case, Itasca Paper Co. v. Niagara Fire Ins. Co. (Minn.) 220 N. W. 425, the Minnesota court again considered the rights of the insurer and insured to have an award of the loss fixed by arbitrators, whether the liability be admitted or denied. The court, speaking through its Chief Justice, said:

"Defendant contends that a denial of liability solely upon the ground that the policy does not cover the destroyed or damaged property operates as a bar to the right of the assured to demand any appraisal whatsoever. Such contention is contrary to the holding of Abramowitz v. Continental Ins. Co., supra. If so, it would be an effective and simple way to destroy the insured's right of appraisal.

"An award does not preclude the insurer from subsequently having its liability on the policy judicially determined. The findings of the board on the matter of coverage are conclusive, in so far as their determination is necessary and an element or step in arriving at the amount of loss and damage; but, though conclusive for such purposes, it does not have such efficacy upon the question of liability, which, when raised, must be decided by the court.

"Defendant was afforded the opportunity, provided by law, to be present and participate in the proceedings before the board. It elected not to do so. It had the privilege to appear there, deny liability, and litigate before the board the amount of loss and damage. Its appearance or nonappearance alone is of no moment. Having the opportunity to participate, the findings of the board as to amount of loss and damage are just as conclusive as if the defendant had participated in the organization and procedure of the board. * * * Plaintiff was entitled to the appraisal. The award stands and evidences the amount to be paid if defendant's liability on the contract is established.".

See also Hamilton v. Ins. Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419.

The purpose of the statute, then, as construed, embodied in the policy, was to ascertain and fix contractually the amount of the loss and damage to the insured and leave only the question of insurer's liability therefor to judicial inquiry if denied. We therefore reject as unsound the contention that no award could be made by arbitration until the question of insurer's liability was first settled by admission or adjudication.

The arbitrators found the loss and damage occasioned by the fire to be $37,012.74, and insured then brought this action to recover the full sum named in the policy, $5,000. It is the contention of Skellet Co. that the goods themselves stored in the warehouse were insured, while the insurance company insists that by the plain terms of the policy it only insured Skellet Co. against its legal liability to the bailors; and it pleaded in its answer that Skellet Co. was in no manner responsible for the fire, that the fire was not due to any negligence of Skellet Co., that Skellet Co. exercised such care in the premises as a reasonably careful person would have exercised under similar circumstances; it pleaded the state statute which holds a public warehouseman to the exercise of reasonable care only and exempts him from liability

where loss or injury could not be avoided by the exercise of the same reasonable care that an owner of similar goods would exercise, unless by agreement he binds himself to greater care, alleged that Skellet Co. had no such agreement and that it exercised the reasonable care that an owner of similar goods would have exercised under the circumstances, and that it issued to the bailors of all stored goods warehouse receipts and contracts which restricted its responsibility to the exercise of reasonable care in receiving, handling, keeping, and delivering goods left in storage. Skellet Company's complaint did not allege or admit that the fire was caused by its negligence or failure to exercise reasonable care.

A demurrer challenged the answer on the ground that it did not state facts sufficient to constitute a defense, and was sustained by the court. Judgment was then entered against the insurer and the ruling on the demurrer is the error assigned and complained of here. Whether the court committed error in that ruling turns, of course, on the question as to what was the subject-matter insured. Was it the stored goods themselves or was it the legal liability of the warehouseman to its bailors?

■ Concededly, Skellet Co.'s relation to the owners of the stored goods and its interest in them was such as entitled it to take out insurance for their protection. Any expression in an insurance contract signifying that intent and purpose is sufficient. To that end the clause "for which they may be legally liable" should have been omitted, or there should have been a statement that the goods described were held in trust, or a similar expression of like import should have been used,—and then there could be no doubt that the contract was made in the name of Skellet Co. for the benefit of the real owners. But the quoted clause, in the absence of "held in trust," etc., is the antithesis of any purpose of that kind, and there is no ambiguity. It is plain that the only subject insured was the legal liability of Skellet Co. for the stored goods. Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co., 55 Minn. 236, 56 N. W. 815, 22 L. R. A. 390; Id., 64 Minn. 61, 66 N. W. 132; Id., 71 Minn. 296, 74 N. W. 140; Washburn-Crosby Co. v. Home Ins. Co., 199 Mass. 463, 85 N. E. 592; Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527, 23 L. Ed. 868; California Ins. Co. v. Union Compress Co., 133 U. S. 387, 10 S. Ct. 365, 33 L. Ed. 730. Counsel for Skellet Co. relies on the two cases last cited, or rather, on expressions found here and there in the opinions in those cases. Counsel for the insurance company cites other expressions found therein which he says look the other way. But these are all argumentative in support of the conclusions reached, that the policies in those cases covered the goods and protected the real owners. One was issued to a warehouse company insuring against loss or damage by fire on "merchandise hazardous or extra-hazardous there owned or held by them in trust, or in which they have an interest or liability, contained in" a certain described warehouse; the other was issued to a compress company on "cotton in bales, there owned or held by them in trust or on commission" while contained in specified places. In our judgment the opinions in these two cases support the reasoning of Judge Mitchell in the case in the 55th Minnesota and Judge Loring in the 199th Massachusetts, in each of which the policy under consideration was substantially the same as the policy in this case, and in each of which it was held that the subject covered was only the liability of the insured. The Minnesota case went to the Supreme Court of that state the third time, and the principle announced in the first opinion was adhered to. It there appears that the policy issued to the railway company insured it "on flour, corn, grain, seeds, provisions, and other merchandise, excluding petroleum or its products; it being understood and agreed that the insurance under this head is to cover the liability of the insured as carriers and warehousemen, as well as their own property, * * * while contained in their elevator situated at Gladstone, Mich." Of this language Judge Mitchell, speaking for the court, said:

"It is too plain to admit of argument that, as to the property of others intrusted to its custody, this was not an insurance for the benefit of the shippers, but for the benefit of the plaintiff exclusively, and only to the extent of its own interest. It is well settled that, if the carrier would insure for the benefit of the owners of the property, this must appear from the use of apt terms in the policy to that effect. There is not a word in this policy that indicates any intent to insure any other interest than that of the plaintiff to the extent of its liability as carrier and warehouseman. It necessarily follows that to entitle plaintiff to recover it was incumbent on it to prove that it was liable as carrier or warehouseman to the owners for the loss of the grain destroyed by fire in its elevator at Gladstone."

On being remanded to the trial court the railway company admitted of record that the

fire in its elevator was caused by the negligence of its servants. It was then held to be entitled to recover, as shown by the subsequent appeals. So also in the Washburn-Crosby Co. Case, Judge Loring, in delivering the opinion of the court, said:

"The policy in the case at bar in terms provides that it is a policy 'attaching upon the property, interests and legal liability of the Boston & Maine Railroad.' That is the equivalent of a statement that it is not a policy for the benefit of whom it may concern."

Other cases which recognize the right of a bailee to take insurance covering only his legal liability to his bailor, and which point out the distinction in terms to be observed between a policy of that kind and one which insures the goods for the benefit of the bailor, are Lancaster Mills v. Merchants' Cotton-Press Co., 89 Tenn. 1, 14 S. W. 317, 24 Am. St. Rep. 586; Roberts v. Firemen's Ins. Co., 165 Pa. 55, 30 A. 450, 44 Am. St. Rep. 642; Fire Ins. Ass'n v. Merchants' & Miners' Transp. Co., 66 Md. 339, 7 A. 905, 59 Am. Rep. 162; and Kellner v. Fire Ass'n of Phila., 128 Wis. 233, 106 N. W. 1060, 116 Am. St. Rep. 45.

This action is on the award of arbitrators, and the answer seems to us to state a good defense to the facts pleaded in the complaint. The court erred in sustaining the demurrer.

Reversed and remanded.