E. G. HUDDLESTON AND CHARLES J. STAMP, DOING BUSINESS AS JAMES C. SMITH HIDE COMPANY, RESPONDENTS, v. THE MANHATTEN FIRE & MARINE INSURANCE COMPANY, A CORPORATION, APPELLANT. —148 S. W. (2d) 74.

Kansas City Court of Appeals. January 6, 1941.

*Clem M. White* and *J. V. Gaddy* for appellant.

*Groves & Watkins, Fred M. Wanger* and *O. W. Watkins, Jr.,* for respondents.

SPERRY, C.—E. G. Huddleston and Charles J. Stamp, doing business as James C. Smith Hide Company, were plaintiffs in an action based on an insurance policy issued by The Manhatten Fire & Marine Insurance Company, a corporation, defendant. Judgment was for plaintiffs and defendant appeals. We will refer to the above parties, respectively, as plaintiffs and defendant.

Plaintiffs were the owners of 12,562 pounds of raw wool, located at Enid, Oklahoma. The wool was transported from Enid to plaintiffs' warehouse at St. Joseph, Missouri, in a truck owned by one J. H. Walker, whom we will refer to as carrier. The wool was packed in large sacks and a tarpaulin covered the cargo. There was substantial evidence tending to prove that the tarpaulin used was thin, had holes in it, and was too small to cover the cargo; that it was not a proper covering to prevent the wool from getting wet in transit. Rain fell on the cargo while enroute, and after its arrival at plaintiffs' docks the loaded truck was permitted, by carrier, to stand all night in the rain. The evidence tended to prove that the wool became wet through the negligence of carrier, and that plaintiffs suffered damages as a result of such negligence. The jury awarded plaintiffs the sum of $425.25 as damages for the decreased value of the wool due to its becoming wet, $65 for the extra expense of drying and retying it, $24.50 penalty for vexatious delay, and $200 for attorneys' fees.

Defendant had issued to carrier its policy of insurance, which policy had attached to it the following indorsement:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, within the limits of liability hereinafter provided, any shipper or consignee for all loss of or damages to all property belonging to such shipper or consignee, and coming into the possession of the insured in connection with its transportation service, for which loss or damage the insured may be held legally liable, regardless of whether the motor vehicles, terminals, warehouses, and other facilities used in connection with the transportation of the property hereby insured are specifically described in the policy or not."

The policy in question was in force and covered the truck in which the wool was transported.

The petition contained language alleging the issuance and terms of the policy, the negligence of the carrier, and the consequent damages to plaintiffs' goods. Plaintiffs did not sue the *carrier*, or seek or obtain a judgment against him, prior to bringing this suit against defendant. Defendant urges that its demurrer to the evidence should have been sustained because, it contends, the terms of the policy require that defendant answer to plaintiffs only after plaintiffs had obtained a judgment against the carrier.

Both parties hereto agree that the policy sued on was issued in compliance with the provisions of the Federal Motor Carrier Act of

1935, Article 215; 49 U. S. C. A., Art. 315. Neither party cites a case wherein the courts of this State have construed a policy of insurance containing a provision identical to that here involved. We have not been cited to a case from any jurisdiction wherein the precise point here considered has been specifically raised and squarely ruled. In support of its contention defendant cites Washburn-Crosby Company v. Home Insurance Company, 85 N. E. 592. There the owner sued defendant insurance company on a policy which covered the property interests of the Boston & Maine Railroad Company, and said Railroad Company's liability for loss of, or damage to, property in its possession; but the property which was alleged to have been lost was not claimed to be the property of insured, nor was it claimed that insured was legally liable for its loss. Thus it will be seen that the facts in that case are not similar to the facts in the case at bar where there was substantial evidence tending to prove that the damage to the wool was caused by the negligence of carrier, for which damage the carrier might be held to be legally liable.

Defendant also relies on Millers' Mut. Fire Ins. Ass'n v. Warroad Potato Growers Ass'n., 94 Fed. (2d) 741. There, as in Washburn-Crosby Company v. Home Ins. Co., *supra,* the property lost, and for which loss a recovery was sought, was not owned by insured nor was it claimed that insured was legally liable for the loss. Defendant cites Orient Insurance Company v. Skellet Company, 28 Fed. (2d) 968, and Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co., 56 N. W. 815. These cases are within the same general class with those above discussed. They do not sustain defendant's contention.

Plaintiff contends that the policy here involved is, in fact, a contract for the benefit of a third party, to-wit; the owners of cargoes transported by the carrier. In Sorenson v. Boston Ins. Co., 20 Fed. (2d) 640, the court had under consideration a policy containing the following provision:

". . . the insurance hereunder shall be limited to the property rights of the assured therein and to the earned freight and advanced charges due the assured and/or its connecting lines, and the legal liability of said assured for the loss or of damage to such merchandise should any such liability exist;"

The court, in construing the policy provisions above quoted, held, l. c. 642:

"The policy, however, is not one of mere indemnity against loss, but covers the legal liability of the assured (see 36 C. J. 1096), and is for the benefit of owners of cargo as well as of the carrier. Under such circumstances, we do not think that the bankruptcy of the carrier can defeat the recovery under the policy, but that under the clause covering the carrier's legal liability, the owners of cargo may recover for loss which they have sustained, and for which the carrier is liable."

The court permitted recovery by the owners of the cargo in a direct suit against the insurance company. The provisions of the policy in that case are very similar to those in the case at bar.

In William Atkin Company v. National Liberty Insurance Company of America, 5 N. Y. Supp. (2d) 863, l. c. 864, 865, the court construed a policy issued in compliance with the Federal Motor Carrier Act containing a clause strikingly similar to the one at bar, and held:

"The beneficiaries of such coverages are the shippers and consignees of merchandise." . . .

"This endorsement, by its terms, is an unconditional and absolute promise to pay. . . ."

In the case of Carolina Transportation & Distributing Company v. American Alliance Insurance Company, 200 S. E. 411, cited by defendant, the court held, l. c. 414:

"It seems to be settled law that anyone for whose benefit an insurance policy is issued, covering the legal liability of the insured, may maintain an action directly against the insurer for any loss suffered."

The court cites Couch's Cyclopedia of Insurance Law, sec. 2060, and the above excerpt from the Sorenson case, *supra*, as authority. While the suit was actually based on a prior judgment obtained against the insured carrier we do not think the remarks were *obiter dicta*.

It will be noted that in none of the cases above discussed, excepting the Sorenson case, was the suit brought against the insurer until after judgment had been obtained against the carrier. However, in none of these decisions did the court use any language which indicated that a direct proceeding would not be proper. In the Sorenson case the suit was directly against the insurer and no point was made of the matter. The unequivocal language of the courts, as above quoted, and other respectable authority, establishes the principle that an action on a policy such as is here involved may be brought directly against the insurer by the cargo owner. Furthermore, it appears that such procedure has the sanction of sound logic and reason. The principle that a third party beneficiary in a contract may sue on said contract (even though he is a stranger to it) is well established in this State. [Elders v. Memphis Land & Lumber Co., 257 S. W. 515; Moscow Mills Sav. Bank v. Sitton, 257 S. W. 1080, l. c. 1082.] The policy contained an unconditional promise to pay if carrier was legally liable, and was made for the benefit of plaintiffs. The demurrer to the evidence was properly overruled.

It is next urged by defendant that plaintiffs' main instruction numbered 1, is erroneous. The alleged errors will be considered as presented by defendant in its brief and argument:

(a) That "it did not require the jury to find that plaintiff was the

owner of the cargo." Throughout the trial of the case in circuit court it was conceded by both parties that plaintiff was the owner of the wool. It is not error to fail to require a jury finding on a conceded fact.

(b) That "it permitted the jury to find negligence for unpleaded facts." Defendant nowhere points out the claimed "unpleaded" facts. No citations of authority are given in support of the contention. The assignment is too general.

(c) That "it did not require the jury to find that plaintiff had contractual relations with defendant." We have hereinabove ruled that plaintiffs need not be actual parties to the contract if they are beneficiaries.

(d) That "it submitted the case on the theory that Walker was a common carrier when all the evidence showed he was a private carrier." There was some evidence to the effect that Walker was a common carrier. The policy so recites the fact to be. But under the evidence here it would make no difference whether he was a common carrier or a private carrier. He was a carrier for hire and there was substantial evidence to the effect that he was negligent in his duty in whatever capacity he operated.

(e) That it did not require the jury "to find the care that Walker was required to exercise." The assignment is too indefinite for consideration.

(f) That "it submitted the case as a tort action and not as an action on the contract of insurance sued on." Under the pleadings of the parties the question of the issuance and delivery of the policy was admitted. It was proper to require a finding of the necessary facts establishing the contract of carriage, the negligence, and the damage resulting therefrom.

(g) That "it did not negative the negligence of plaintiffs." Contributory negligence was not pleaded, nor was it claimed by defendant that the damage to the wool was the result of any negligence on the part of plaintiffs.

(h) That "it did not require the jury to find that Walker had contractual relations with defendant." Defendant admitted the execution and deliver of the policy to Walker. That fact was conceded on every hand.

The above assignments of error in connection with the instruction are not developed in the argument nor are they supported with any citations of authority.

Defendant contends that plaintiffs' petition did not allege facts sufficient to justify proof or submission of the issue of vexatious refusal to pay, and relies on Young v. Insurance Company, 269 Mo. 1, l. c. 21. We think the allegations are sufficient when measured by the rule announced in the later case of Block v. United States Fidelity

& Guaranty Company of Baltimore, 290 S. W. 429, l. c. 440, by the Supreme Court *en banc.*

Lastly it is argued that defendant should be permitted to litigate, in good faith, disputed questions of fact or of law without being subject to penalties. Plaintiffs conceded that to be the law, and we have, many times heretofore, so held.

The precise question of law here raised has never been raised or ruled in any decision rendered by the courts of this State, so far as we have been able to learn; but the difficulty in disposing of the question of vexatious refusal to pay lies in the following facts as disclosed by the record: Defendant was notified of the claim under the policy on May 10, 1939. On May 11, 1939, defendant acknowledged such notice. On May 23, 1939, defendant wrote plaintiffs that it had investigated the facts of this loss, had checked same against the policy, and that the policy "seems to cover against the hazards of accidental collision or upset, cyclone, tornado, flood and rising water and it would seem that none of the hazards were involved in this particular loss." Plaintiffs requested blanks for proof of loss, and, under date of June 19, 1939, defendant answered to the effect that "proof of loss" had nothing to do with any third party, and refused to send blanks for proofs. At no time, prior to suit, did defendant deny liability on the ground that plaintiffs had not first obtained a judgment against insured carrier; and in its answer defendant pleaded, among other things, failure of plaintiffs to submit proofs of loss.

We cannot hold that the question of interpretation of the policy was not one upon which defendant had the right to seek the decision of the courts, Stewart v. North American Accident Insurance Company, 33 S. W. (2d) 1005, l. c. 1009; but we held in Thomas v. Metropolitan Life Insurance Company, 89 S. W. (2d) 590, l. c. 593:

"The letters written by appellant refusing to pay, gave an arbitrary and false basis therefor, and, in order to state an apparent reason, misconstrued the terms and effect of the attached rider or supplementary contract sued on. Hence a recovery for vexatious delay was proper."

Where, as here, there was a question of law about which lawyers might well differ, yet defendant fails to mention such question in any of its correspondence prior to institution of suit and, on the contrary, raises a question not at all supported by the policy or the facts, we think the question of vexatious refusal to pay was one for the jury. [Porter v. Equitable Life Insurance Company, 71 S. W. (2d) 766.] The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.