Irving **CORNBLATH**, d/b/a Radine Department Store, Plaintiff-Appellant,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant-Respondent.

No. 31786.

St. Louis Court of Appeals.

Missouri.

June 15, 1965.

Rehearing Denied July 13, 1965.

Ziercher, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., George J. Bude, Clayton, for plaintiff-appellant.

Evans & Dixon, Ralph C. Kleinschmidt, St. Louis, for defendant-respondent.

ANDERSON, Judge.

This action was brought by appellant, plaintiff below, to recover under an insurance policy issued to him by respondent, for a loss caused by a safe burglary occurring on appellant's premises, said policy by its terms insuring appellant against loss by reason of safe burglary or robbery at said premises. The case was submitted to the Court on an agreed stipulation of facts. From this stipulation it appears that appellant was the owner, proprietor and operator of a retail store at 1810 S. 39th St. in St. Louis. The business was operated under the trade name Radine Department Store.

On or about January 4, 1961, respondent issued to appellant its "Money and Securities Broad Form Policy" No. BF–35374. This policy was for a term of three years and was in full force and effect on April 12, 1962.

The above mentioned policy under "Coverage A—Loss Inside the Premises" provides as follows:

> "To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof within the premises or within any banking premises or similar recognized places of safe deposit.

> "To pay for loss of (a) other property by safe burglary or robbery within the premises or attempt thereat, and (b) a locked cash drawer, cash box or cash register by felonious entry into such container within the premises or attempt thereat or by felonious abstraction of such container from within the premises or attempt thereat.

> "To pay for damage to the premises by such safe burglary, robbery or felonious abstraction, or by or following burglarious entry into the premises or attempt thereat, provided with respect to damage to the premises the insured is the owner thereof or is liable for such damage."

Under the policy "money" is defined as " * * * currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public."

The policy also defined "premises" as the " * * * interior of that portion of any building at a location designated in the declarations which is occupied by the insured in conducting the business as stated therein."

In the schedule of coverage, the location of the premises is stated to be "1810 S. 39th Street, St. Louis, Missouri," and the limit of coverage with respect thereto under "Coverage A" is fixed at the sum of $2,000.00. The policy describes the business conducted on the premises as a "Department Store."

On April 12, 1962, appellant sustained loss by reason of a safe burglary which occurred on the above mentioned premises. This loss consisted of property damage to appellant's safe caused by felonious breakage in the amount of $375.00, property damage to the first floor of said premises caused by a forceable entry amounting to $25.00, and loss by burglary of certain currency and coins in the sum of $1,676.35. A partial recovery of the currency and coins was subsequently made. In addition, appellant sustained a loss of certain United States

coins, which by reason of their mint dates and condition, have a market value as collector's items, or numismatic value, in excess of their face value. The face or exchange value of the coins is $58.01. The coins owned by appellant had no relation to his trade or business.

The parties stipulated that if appellant was entitled to recover only the face value of the rare coins, respondent's liability under the policy is $1,034.36. Respondent tendered this sum into the registry of the Court for the benefit of appellant. It was further stipulated that, if appellant is entitled to recover on the basis of the market or numismatic value of the rare coins, respondent's liability under the policy is $2,000.00 or $965.64 more than that paid into the registery of the Court. In that event the parties agreed by the stipulation of facts that judgment should be for appellant for $965.64 at respondent's cost.

On October 1, 1963, the Court entered its judgment, finding that appellant did in fact sustain loss and damage to his property as referred to above, including the loss of certain rare coins owned by appellant as collector's items. The Court also found that these rare coins have a face value of $58.01 and were "Money" as that term is used in "Coverage A" of the insuring agreement of the policy. The Court further found that appellant was entitled to recover the sum of $1,034.36, the amount previously tendered into the registry of the Court for the benefit of appellant. Judgment was therefore ordered for the respondent, defendant below, at appellant's cost, and that the sum of $1,034.36 paid into the registry of the Court for appellant's benefit be paid to appellant. From this judgment the appeal was taken. The amount tendered into Court was thereafter paid to appellant under Court order and agreement between the parties that said payment would be without prejudice to plaintiff's right to appeal from the judgment.

Appellant contends that the Court erred in holding that the face value of the coins in question must be used in the determination of their value. It is urged in support of this contention that although we regard money as a medium of exchange, the policy in suit does not include the phrase "medium of exchange" in the definition of money, hence any coin is money and for that reason there is no justification for the assessing the loss thereof at face value, but on the contrary, such a loss should be assessed at the market value. As an example of the alleged fallacy in the Court's ruling appellant points out that confederate coins and ancient coins have no exchange value, yet are coins with a market value as collector's items which value should be recoverable in assessing their loss. Another analogy urged is that of bonds which have a face value, but are bought and sold according to their market value.

■ No matter how broad or how general the terms of a contract may be, it will extend only to those matters with reference to which the parties intended to contract. And in construing the contract, it is always permissible for the Court to consider the situation of the parties, and the accompanying circumstances at the time of its execution in order the more perfectly to understand and explain the intent and meaning of it. 17A C.J.S. Contracts § 321, p. 199; Restatement of the Law of Contracts, § 235(d); St. Louis Union Trust Co. v. MacGovern & Co., 297 Mo. 527, 249 S.W. 68; North St. Louis Building & Loan Ass'n v. Obert, 169 Mo. 507, 69 S.W. 1044; Fulkerson et ux., v. Great Lakes Pipe Co., 335 Mo. 1058, 75 S.W.2d 844.

■ In Restatement of the Law of Contracts, the author comments on the rule stated in clause (d) of § 235 as follows:

*"Comment on Clause* (d):

"e. The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of in-

terpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement.

"f. In an integrated contract, however, if accompanying circumstances indicate an intent at variance with any meaning that can be attached to the words of the contract, even when the words are looked at in the setting in which they were used, that intent can be given no effect unless the facts justify a reformation of the contract. Yet, as all language will bear some different meanings, evidence of surroundings is always admissible. Its operative effect depends on how far the words will stretch, and how alien from the ordinary meaning of the words is the intent they are asked to include."

Considering the facts and circumstances in evidence it becomes apparent that the coverage of the policy in the case at bar was designed to cover loss of money and evidence of money along with other property incidental to the conduct of his business of running a department store. In other words from risks to which trades and businesses are exposed, and those items which were or could be used in connection therewith. Money in business is a medium of exchange passing at its face value. Here the rare coins constituted money which could be used in the conduct of the business. They are not in the same category as confederate money, or ancient coin which coins are not used as a media of exchange. In the case of the latter a policy of insurance which covered same might be said to contemplate coverage in accordance with their market value as rare coins. But in the case at bar, appellant was not in the business of dealing in rare coins at his department store and the policy did not mention rare coins, but merely did mention money which was defined as currency, coins, etc., and it must have been, considering the nature of the business and the policy terms, within the contemplation of the parties to insure money as a medium of exchange in the operation of the business and at its face value. A bond of course is not money or a medium of exchange, but property the market value of which would be recoverable in case of loss. We fail to see how an argument could be based thereon in support of appellant's contention.

It is next urged that assuming, arguendo, that the trial court was not in error in finding that as "money" the loss of the coins should be assessed at face value, the Court erred in failing to find that the loss of the coins was covered under the "other property" coverage provision. In support of this contention it is said that the rare coins may be classed in two categories; that if they are used as money, they are money, but if used as a coin collection, they are "other property;" that the primary characteristics and utility of rare coins relate to history and art and not to money, and for that reason said coins should be construed as "other property" and their value should be considered at market value as rare coins and not as a medium of exchange.

This argument begs the issue by ignoring completely the clear language of the policy, and would inject an ambiguity where none exists. "Money" is expressly defined in the policy as including "coins." The policy insures two classes of objects (1) "money and securities," and, (2) "other property." Both the terms "money" and "securities" are expressly defined in the policy. Since "coins" are expressly defined as money, they cannot be "other property."

From all the facts and circumstances, we are convinced of the correctness of the trial court's ruling. Its construction of the policy was proper. The judgment is affirmed.

RUDDY, P. J., and WOLFE, J., concur.